IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BONNIE BRAY, | : |
|       Plaintiff, | :     No. 10-cv-00137 |
| | : |
| v. | : |
| | : |
| BOROUGH OF KUTZTOWN, ET.AL. | : |
| | : |
|       Defendants. | : |
| | : |

## AMENDED COMPLAINT

Plaintiff Bonnie Bray ("Ms. Bray"), by and through her attorneys, Nochumson P.C., files this Amended Complaint against Defendants Borough of Kutztown (the "Borough"), Theodore R. Cole, Jr. ("Chief Cole"), individually and in his official capacity, Gabriel Khalife ("Mr. Khalife"), individually and in his official capacity, Malcolm A. Eidle ("Mr. Eidle"), individually and in his official capacity, and Edwin K. Seyler ("Mr. Seyler"), individually and in his official capacity (collectively, the "Defendants"), averring as follows:

### I.    PARTIES

1.    Ms. Bray is an adult individual who resides at 116 Beaver Creek Road, Fleetwood, Pennsylvania 19522.

2.    The Borough is a municipality created and existing under the laws of the Commonwealth of Pennsylvania with a principal business address at 45 Railroad Street, Kutztown, Pennsylvania 19530.

3.    Chief Cole is an adult individual who, upon information and belief, resides at 20 Heffner Road, Fleetwood, Pennsylvania 19522. At all times hereto relevant, and specifically from 1996 through 2008, Chief Cole was the Chief of the Police Department of the Borough.

4.     Mr. Khalife is an adult individual who, upon information and belief, has a principal business address at 45 Railroad Street, Kutztown, Pennsylvania 19530.   From approximately June 2008 and ongoing, Mr. Khalife has been the Manager of the Borough.

5.     Mr. Eidle is an adult individual who, upon information and belief, has a principal business address at 45 Railroad Street, Kutztown, Pennsylvania 19530.   At all times hereto relevant, Mr. Eidle has been the President of the Council of the Borough.

6.     Mr. Seyler is an adult individual who, upon information and belief, has a principal business address at 45 Railroad Street, Kutztown, Pennsylvania 19530.   At all times hereto relevant, Mr. Seyler has been the Vice President of the Council of the Borough.

## II.     JURISDICTION

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1331 and 28 U.S.C. § 1343 as the matter in controversy arises under the Constitution and laws of the United States.

8.     Venue is proper in this judicial district as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. *See* 28 U.S.C. § 1391(b).

## III.     FACTUAL BACKGROUND

9.     The town of Kutztown, in Berks County, Pennsylvania, became a Borough in 1815 and is the second largest Borough in Berks County, after the City of Reading, Berks County's county seat.

10.     In addition to providing government services for its citizenry, the Borough also provides electric and telecommunication services, including Internet service, to the citizens.

11.     The Council is the governing legislative body of the Borough.

12.     The Mayor of the Borough and the six members of the Council, including its

President and Vice President, are elected by the people of the Borough for four-year terms.

13.     The Officers of the Council, specifically the President, Vice President and President Pro Temp, are selected by a majority of the members of Council.

14.     The Secretary and the Manager/Treasurer of the Borough are both appointed by a majority of the members of Council and serve at the discretion of Council.

15.     Ms. Bray has been employed by the Borough since June 1995, serving as Administrative Coordinator from 1995 until January 28, 1998, as Borough Secretary from January 28, 1998 until present and as Human Resources Director starting in 2002 until the present.

16.     Ms. Bray is also the Secretary of the Council, although she's not a member of the Council.

17.     As Human Resources Director, Ms. Bray has the responsibility of developing and administering personnel policies, making staffing recommendations, receiving, processing and investigating EEO complaints, assisting and advising the Council, Borough departments, and other officials in human resources matters, including resolving EEO issues and complaints, assisting in labor negotiations and implementing and coordinating employee benefit programs for the Borough's fifty four (54) full time and sixteen (16) part time employees.

18.     Ms. Bray's job position requires her to interact frequently with Mr. Khalife, Mr. Eidle and Mr. Seyler, in their official capacities as, respectively, the Manager of the Borough and the President and Vice-President of the Council of the Borough.

19.     Prior to his resignation in 2008, Ms. Bray was also required to frequently interact with Chief Cole in his capacity as Chief of the Police Department of the Borough.

20.     Throughout her tenure as Secretary and Human Resources Director, Ms. Bray had clashed with Chief Cole over various personnel issues, including, but not limited to review of police timesheets, application of leave and holiday time, policy issues, labor contract issues, authority issues, employee privacy issues and civilian staffing issues.

21.     On or about January 13, 2009, Ms. Bray was one of the recipients of a letter authored by Patrol Officer Robert Gately ("Officer Gately") of the Borough Police Department.

22.     In his letter, Officer Gately stated that, prior to resigning his position with the Borough, Chief Cole had "routinely and loudly" referred to Ms. Bray as "The Big C" or as "That Cunt". A true and correct copy of Officer Gately's letter is attached hereto as Exhibit "A".

23.     Prior to Officer Gately's letter, Ms. Bray had no personal knowledge of Chief Cole's defamatory and slanderous statements against her.

24.     Furthermore, in his letter, Officer Gately stated that Chief Cole had publicly stated that he believed that the female Mayor of the Borough "would be a good fuck". *See* Exhibit "A".

25.     In his letter, Officer Gately outlined additional sexually discriminatory behavior on the part of Chief Cole which created a hostile work environment. *See id.*

26.     According to the Borough's written Anti-Harassment Policy, the Borough represents itself as being "committed to providing a work environment that is free of unlawful harassment". A true and correct copy of the Borough's Anti-Harassment Policy is attached hereto as Exhibit "B".

27.     The Borough's written Anti-Harassment Policy provides that the Borough "will not tolerate actions, words, jokes, or comments based on an individual's sex....or any other legally protected characteristic, if such conduct would be offensive to a reasonable person. Such

harassment (both overt and subtle) can serve to create an offensive work environment and therefore, is prohibited". *See* Exhibit "B".

28.     The Anti-Harassment Policy defines sexual harassment as, *inter alia*, "verbal abuse of a sexual nature" and "sexually degrading words to describe an individual". *See id.*

29.     Sexual harassment also includes "[s]ubstantially interfering with the individual's work performance or creating an intimidating, hostile or offensive work environment". *See id.*

30.     Prohibited harassment "includes conduct which has the purpose or effect of unreasonably interfering with an employee's work performance or creating an environment which is intimidating, hostile or offensive to the employee". *See id.*

31.     Pursuant to the Anti-Harassment Policy, an employee who believes herself to be the victim of harassment "is required to promptly report the facts of the incident to the Borough Manager, the Secretary/Director of Human Resources or a member of the Personnel Committee". *See id.*

32.     The Borough is required to "promptly conduct an investigation…and the Borough will advise the individual of the conclusions". *See id.*

33.     Furthermore, "[n]o retaliation against any person who files a complaint or cooperates in an investigation shall be taken". *See id.*

34.     Upon information and belief, Mr. Eidle, Mr. Seyler and Mr. Khalife were all aware of Chief Cole's inappropriate, defamatory and discriminatory conduct when it was taking place and did nothing to remedy the situation.

35.     As no investigation had taken place to date, on February 17, 2009, Ms. Bray filed an unlawful harassment and gender discrimination complaint with the Borough, based on Officer Gately's letter, which had been distributed to Council, the Mayor and the Borough Manager as

well as herself. A true and correct copy of the complaint of February 17, 2009 is attached hereto as Exhibit "C".

36.    On February 25, 2009, Ms. Bray received a response to her complaint from Mr. Seyler, conceding that Chief Cole's conduct was "inappropriate and unacceptable", but stating that the Borough was "unable to engage in any disciplinary action at this time" as Chief Cole had resigned prior to the sending of Officer Gately's letter and that "we do not consider a further investigation necessary". A true and correct copy of the correspondence of February 25, 2009 is attached hereto as Exhibit "D".

37.    Subsequent to Ms. Bray filing the complaint, she has been retaliated against by Mr. Khalife, Mr. Eidle and Mr. Seyler.

38.    Ms. Bray has been isolated from personnel decision making and other matters that fall within her job duties.

39.    In May 2009, Ms. Bray was informed that she was not allowed to contact the Borough Solicitor directly without first obtaining Mr. Khalife's approval.

40.    Mr. Khalife unilaterally made the decision without consulting with Ms. Bray first, even though the decision impacted her job duties with respect to human resources issues and responding to Right-To-Know requests.

41.    As a result of Mr. Khalife's decision, Ms. Bray's ability to perform her duties as Human Resources Director and Right-To-Know Officer was negatively impacted as she no longer had control over important decisions that impacted her daily work demands and her decision-making powers were subject to the discretion of Mr. Khalife.

42.    Consequently, Ms. Bray was forced to resign her position as Right-To-Know Officer.

43.     Mr. Khalife also excluded Ms. Bray from negotiating with the union representing the Borough police officers regarding a labor contract issue.

44.     Mr. Khalife additionally excluded Ms. Bray from attending a human resources workshop in State College, Pennsylvania which Ms. Bray had attended in the past.

45.     Mr. Khalife has failed to support Ms. Bray in responding to difficult employment issues which has resulted in Ms. Bray being shunned by supervisors and colleagues.

46.     In June 2009, at a Personnel Committee meeting attended by numerous employees of the Borough, Mr. Eidle verbally abused Ms. Bray after she disagreed with him by cursing and yelling at her, "God damn it, that's not the way we used to do things", causing her great humiliation.

47.     During the same meeting, Mr. Seyler, who is also the Personnel Committee Chairman, also verbally abused Ms. Bray, telling her she had to do as he said.

48.     Subsequent to the meeting, in front of Mr. Eidle and another member of Council, Ms. Bray informed Mr. Seyler that he owed her an apology, in response to which they all snickered at Ms. Bray.

49.     In addition to the discriminatory and retaliatory behavior of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, the Borough has a history of a hostile work environment and of discriminating against and failing to advance and or accommodate women.

50.     Out of the six (6) members of Borough Council, none are female.

51.     Of the eleven (11) members of the Borough Police Department, none are female.

52.     Mr. Eidle frequently makes disparaging remarks about the female Mayor of the Borough.

53.     An incident occurred in the spring of 2008, during which Mr. Eidle called the female Mayor a derogatory term used to describe a part of the female anatomy in front of one of the Superintendents of the Borough and other Borough employees.

54.     The Manager/Treasurer, Finance Director, Secretary/Human Resources Director and Assistant Secretary of the Borough all serve at the discretion of the all-male Council.

55.     In 2008, when the position of Borough Manager became vacant, the Council would not interview any female candidates.

56.     Mr. Eidle and Mr. Seyler offered Ms. Bray the position of Borough Manager on an interim basis, which would have resulted in an increase in her compensation, only to subsequently rescind the offer and give the position to a male.

57.     In 2009, Mr. Khalife refused Ms. Bray's request, as well as that of another female employee, to work from home on a project while a male colleague frequently works from home.

58.     On June 1, 2009, Ms. Bray filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging hostile work environment, gender discrimination and retaliation.  A true and correct copy of the time-stamped Charge of Discrimination is attached hereto as Exhibit "E".

59.     On March 11, 2010, Ms. Bray received a Right-To-Sue letter from the United States Department of Justice, thus making this matter ripe for adjudication.  A true and correct copy of the Right-To-Sue letter is attached hereto as Exhibit "F".

8

Count I
Ms. Bray v. the Borough
HOSTILE WORK ENVIRONMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS
ACT OF 1964, 42 U.S.C. § 2000e-2(a)

60.     Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

61.     At all times relevant, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler were agents and/or representatives of the Borough.

62.     In verbally abusing, disparaging and defaming Ms. Bray, as well as other female employees of the Borough, and in using derogatory and insulting terms relating to Ms. Bray and other female employees, as well as females, generally, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler created a hostile work environment.

63.     The behavior of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler was intentional and discriminatory based on Ms. Bray's gender.

64.     The discrimination was pervasive and regular so as to constitute a hostile work environment.

65.     The discrimination detrimentally affected Ms. Bray in that it caused injury to her reputation, as well as caused her humiliation and mental anguish.

66.     Such discrimination would detrimentally affect a reasonable female in Ms. Bray's job position.

67.     Due to the important nature of the positions of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, as well as their public and obvious verbal abuse and disparagement of Ms. Bray, the Borough knew or should have known of the hostile work environment, but failed to take prompt remedial action.

68.     Furthermore, due to the patently obvious and apparent nature of the harassment, the Borough is deemed to have constructive knowledge of the hostile work environment.

69.     The Borough was also placed on actual knowledge of Chief Cole's discriminatory conduct by Officer Gately's letter.

70.     Ms. Bray's knowledge of the hostile work environment is imputed to the Borough as, due to her position as Human Resources Director, she was employed to report or to respond to a hostile work environment.

71.     As a direct and proximate result of the hostile work environment, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

72.     If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 2000e-5(k), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

73.     Ms. Bray is also entitled to punitive damages as the Borough engaged in discriminatory practices with malice and with reckless indifference to her federally protected rights. *See* 42 U.S.C. § 1981a(b)(1).

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough and award her compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count II
Ms. Bray v. the Borough
GENDER DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
OF 1964, 42 U.S.C. § 2000e-2 et.seq.

74.     Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

75.     Ms. Bray is a member of a protected class in that she is female.

76.     She was qualified for the job position of interim Borough Manager, which would have resulted in greater wage compensation.

77.     Notwithstanding her qualification for the position of interim Borough Manager, the job offer was revoked by Mr. Eidle and Mr. Seyler, who, in turn, offered the position to a male.

78.     There was no legitimate, non-discriminatory reason for the revocation of the job offer and the revocation was merely pretext for gender discrimination.

79.     As a direct and proximate result of the gender discrimination, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

80.     If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 2000e-5(k), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

81.     Ms. Bray is also entitled to punitive damages as the Borough engaged in discriminatory practices with malice and with reckless indifference to her federally protected rights.  *See* 42 U.S.C. § 1981a(b)(1).

82.     The Borough is vicariously liable for the damages suffered by Ms. Bray since Mr. Eidle and Mr. Seyler were acting within the scope of their employment when they committed this conduct.

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough and award her compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count III

Ms. Bray v. the Borough

RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42
U.S.C. § 2000e-2 and 42 U.S.C. § 2000e-3

83.　Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

84.　By filing a complaint with the Borough on the basis of gender discrimination and hostile work environment, Ms. Bray engaged in a protected activity.

85.　The Borough, as represented by Mr. Khalife, Mr. Eidle and Mr. Seyler, took an adverse employment action against Ms. Bray following her complaint in that the terms, conditions and privileges of her employment were altered, she was deprived of employment opportunities and her status as an employee was adversely affected.

86.　There was a causal link between her complaint and the adverse employment actions in that the adverse employment actions temporally followed her complaint.

87.　As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

88.　If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 2000e-5(k), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

89.　Ms. Bray is also entitled to punitive damages as the Borough engaged in discriminatory practices with malice and with reckless indifference to her federally protected rights. *See* 42 U.S.C. § 1981a(b)(1).

90.　The Borough is vicariously liable for the damages suffered by Ms. Bray since Mr. Khalife, Mr. Eidle and Mr. Seyler were acting within the scope of their employment when they committed this conduct.

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough and award her compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count IV

Ms. Bray v. the Borough

VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(a)

91.     Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

92.     In verbally abusing, disparaging and defaming Ms. Bray, as well as other female employees of the Borough, and in using derogatory and insulting terms relating to Ms. Bray and other female employees, as well as other females, generally, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler discriminated against Ms. Bray based on her gender with respect to her terms, conditions and privileges of employment so as to violate the Pennsylvania Human Relations Act, 43 P.S. § 955(a).

93.     The behavior of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler was intentional and discriminatory based on Ms. Bray's gender and that of other female employees.

94.     The discrimination was pervasive and regular so as to constitute a hostile work environment.

95.     The discrimination detrimentally affected Ms. Bray in that it caused injury to her reputation, as well as caused her humiliation and mental anguish.

96.     Such discrimination would detrimentally affect a reasonable female in Ms. Bray's job position.

97.     Due to the important nature of the positions of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, as well as their public and obvious verbal abuse and disparagement of Ms. Bray,

as well as other female employees, the Borough knew or should have known of the hostile work environment, but failed to take prompt remedial action.

98.     Furthermore, due to the patently obvious and apparent nature of the harassment, the Borough is deemed to have constructive knowledge of the hostile work environment.

99.     The Borough was also placed on actual knowledge of Chief Cole's discriminatory conduct by Officer Gately's letter.

100.    Ms. Bray's knowledge of the hostile work environment is imputed to the Borough as, due to her position as Human Resources Director, she was employed to report or to respond to a hostile work environment.

101.    As a direct and proximate result of the hostile work environment, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

102.    If Ms. Bray prevails in this matter, pursuant to 43 P.S. § 962(c.2), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

103.    Ms. Bray is also entitled to punitive damages given the outrageousness of the Borough's conduct.

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough and award her compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count V
Ms. Bray v. the Borough, Mr. Khalife, Mr. Eidle, Mr. Seyler
VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(d)

104.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

105.   By filing a complaint with the Borough on the basis of gender discrimination and hostile work environment, Ms. Bray engaged in a protected activity under the Pennsylvania Human Relations Act.

106.   The Borough, Mr. Khalife, Mr. Eidle, Mr. Seyler took an adverse employment action against Ms. Bray following her complaint in that the terms, conditions and privileges of her employment were altered, she was deprived of employment opportunities and her status as an employee was adversely affected.

107.   There was a causal link between her complaint and the adverse employment actions in that the adverse employment actions temporally followed her complaint.

108.   By retaliating against Ms. Bray, the Borough, Mr. Khalife, Mr. Eidle and Mr. Seyler discriminated against her in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(d).

109.   As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

110.   If Ms. Bray prevails in this matter, pursuant to 43 P.S. § 962(c.2), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

111.   Ms. Bray is also entitled to punitive damages given the outrageousness of the Borough, Mr. Khalife, Mr. Eidle and Mr. Seyler's conduct.

112.   The Borough is vicariously liable for the damages suffered by Ms. Bray since Mr. Khalife, Mr. Eidle and Mr. Seyler were acting within the scope of their employment when they committed this conduct.

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her

compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count VI

Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle, Mr. Seyler

VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT, 43 P.S. § 955(e)

113.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

114.    In verbally abusing, disparaging and defaming Ms. Bray, as well as other female employees of the Borough, and in using derogatory and insulting terms relating to Ms. Bray and other female employees, as well as other females, generally, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler aided, abetted, incited, compelled and coerced unlawful discriminatory behavior against Ms. Bray, specifically, and other female employees of the Borough, in general, so as to constitute a violation of the Pennsylvania Human Relations Act, 43 P.S. § 955(e).

115.    As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

116.    If Ms. Bray prevails in this matter, pursuant to 43 P.S. § 962(c.2), she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

117.    Ms. Bray is also entitled to punitive damages given the outrageousness of the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler's conduct.

118.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler were acting within the scope of their employment when they committed this conduct.

WHEREFORE, Ms. Bray requests that this Court enter judgment in her favor and against the Borough, Chief Cole. Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award

16

her compensatory damages, punitive damages, interest, costs of suit, reasonable attorney's fees, and other such relief as the Court deems just and appropriate.

Count VII
Ms. Bray v. the Borough and Chief Cole
DEFAMATION PER SE/SLANDER PER SE

119.   Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

120.   In publicly "routinely and loudly" referring to Ms. Bray as "The Big C" or as "That Cunt", Chief Cole made false, profane, inflammatory and defamatory statements about her.

121.   By making the statements to other people within the Borough, Chief Cole published his statements to third parties.

122.   Chief Cole either knew that the statements were false or acted in reckless disregard of their truth or falsity.

123.   Chief Cole's comments about Ms. Bray harmed her business reputation with respect to her ability and competence to perform her job duties and, thus, constitute defamation per se/slander per se.

124.   Any ordinary person overhearing Chief Cole's comments about Ms. Bray would understand them to be defamatory and slanderous as the statements relate to her.

125.   There was no privilege or justification for Chief Cole's statements.

126.   As a direct and proximate result of Chief Cole's malicious defamatory and slanderous statements, Ms. Bray has been:

(a)   harmed in her reputation as Secretary and Human Resources Director of the Borough;

(b)     permanently harmed and defamed;

(c)     significantly embarrassed and humiliated;

(d)     humiliated and held out to scorn of the public;

(e)     publicly and privately embarrassed within the Borough government and in the community at large; and

(f)     suffered a loss of future earning.

127.    As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including pecuniary damages and emotional and mental distress.

128.    Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole's conduct.

129.    Chief Cole's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

130.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole was acting within the scope of his employment when he committed this tortious conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against Chief Cole and the Borough, jointly and severally, and award her compensatory damages, punitive damages, reasonable attorneys' fees and costs, interest, and other such relief as the Court deems just and appropriate.

Count VIII
Ms. Bray v. Chief Cole and the Borough
COMMERCIAL DISPARAGEMENT

131.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

18

132.    Chief Cole made false statements about Ms. Bray's work product.

133.    Chief Cole either knew that the statements were false or acted in reckless disregard of their truth or falsity.

134.    Chief Cole either intended the publication of these false statements to cause pecuniary loss to Ms. Bray or reasonably should have recognized that publication would result in pecuniary loss to her.

135.    As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including pecuniary damages and emotional and mental distress.

136.    Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole's conduct.

137.    Chief Cole's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

138.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole was acting within the scope of his employment when he committed this tortious conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against Chief Cole and the Borough, jointly and severally, and award her compensatory damages, punitive damages, reasonable attorneys fees and costs, interest, and other such relief as the Court deems just and appropriate.

Count IX
Ms. Bray v. Chief Cole and the Borough
FALSE LIGHT CLAIM

139.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

140.    Ms. Bray has been cast in a false light by the statements made by Chief Cole about her.

141.    Chief Cole's statements falsely and maliciously characterized Ms. Bray to the public, the Mayor of the Borough, the Council of the Borough and to the other employees of the Borough.

142.    Chief Cole's false and malicious statements would be highly offensive to a reasonable person employed in Ms. Bray's position and cause shame, humiliation and mental anguish to a person of ordinary sensibilities.

143.    Chief Cole either knew that the statements were false or acted in reckless disregard of their truth or falsity and whether Ms. Bray would be placed in a false and harmful light.

144.    As a direct and proximate result thereof, Ms. Bray has suffered and/or will suffer compensatory damages, including pecuniary damages and emotional and mental distress.

145.    Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole's conduct.

146.    Chief Cole's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

147.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole was acting within the scope of his employment when he committed this tortious conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against Chief Cole and the Borough, jointly and severally, and award her compensatory damages, punitive

damages, reasonable attorneys fees and costs, interest, and other such relief as the Court deems just and appropriate.

Count X
Ms. Bray v. Chief Cole and the Borough
TORTIOUS INTERFERENCE WITH CURRENT BUSINESS RELATIONS

148.   Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

149.   Ms. Bray had and/or has a current business relationship with the Borough, its officers and employees.

150.   In making false statements about Ms. Bray and her job duties, Chief Cole intended to harm Ms. Bray and interfere with these relations.

151.   There was no privilege or justification for Chief Cole's actions.

152.   As a direct and proximate result of Chief Cole's tortious interference with her current business relations, Ms. Bray has suffered and/or will suffer in the future compensatory damages, including pecuniary damages and emotional and mental distress.

153.   Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole's conduct.

154.   Chief Cole's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

155.   The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole was acting within the scope of his employment when he committed this tortious conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against Chief Cole and the Borough, jointly and severally, and award her compensatory damages, punitive

damages, reasonable attorneys fees and costs, interest, and other such relief as the Court deems just and appropriate.

Count XI
Ms. Bray v. Chief Cole and the Borough
TORTIOUS INTERFERENCE WITH PROSPECTIVE
BUSINESS RELATIONS

156.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

157.    Ms. Bray had and/or has a prospective business relationship with the Borough, its officers and employees.

158.    In making false statements about Ms. Bray and her job duties, Chief Cole intended to harm Ms. Bray and interfere with these relations.

159.    There was no privilege or justification for Chief Cole's actions.

160.    As a direct and proximate result of Chief Cole's tortious interference with her prospective business relations, Ms. Bray has suffered and/or will suffer in the future compensatory damages, including pecuniary damages and emotional and mental distress.

161.    Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole's conduct.

162.    Chief Cole's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

163.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole was acting within the scope of his employment when he committed this tortious conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against Chief Cole and the Borough, jointly and severally, and award her compensatory damages, punitive

damages, reasonable attorneys fees and costs, interest, and other such relief as the Court deems just and appropriate.

Count XII<br>
Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler<br>
<u>VIOLATION OF 42 U.S.C. § 1983 FOR DEPRIVATION OF PROCEDURAL DUE PROCESS</u><br>
<u>UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION</u>

164.   Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

165.   42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States.

166.   In defaming Ms. Bray, thus causing damage and stigma to her reputation, and in creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, Chief Cole, acting under color of state law, deprived her of her right to procedural due process under the Fourteenth Amendment of the United States Constitution.

167.   In creating a hostile work environment, discriminating against Ms. Bray based on her gender and in retaliating against her in violation of Title VII of the Civil Rights Act of 1964, Mr. Khalife, Mr. Eidle and Mr. Seyler, acting under color of state law, deprived her of her right to procedural due process under the Fourteenth Amendment of the United States Constitution.

168.   By failing to investigate and/or remedy the hostile work environment and by continuing to retaliate against Ms. Bray, Mr. Khalife, Mr. Eidle and Mr. Seyler, acting under color of state law, deprived Ms. Bray of due process of law.

169.   The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, as they had final policy-making authority such that their conduct represented and continues to represent official policy.

170.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, also because a final policy-maker rendered and continues to render their conduct official for liability purposes by having delegated to them authority to act or speak for the government, or by ratifying their conduct or speech after it occurred.

171.    As a direct and proximate result of the violation of 42 U.S.C. § 1983 by the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

172.    If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 1988, she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

173.    Ms. Bray is also entitled to punitive damages as the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler willfully and intentionally violated her civil rights and/or acted and/or continue to act with reckless or callous indifference to her federally protected rights.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her compensatory damages, punitive damages, attorney's fees, costs, interest, and other such relief as the Court deems just and appropriate.

Count XIII

Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler

VIOLATION OF 42 U.S.C. § 1983 FOR DEPRIVATION OF SUBSTANTIVE DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

174.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

175.    42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States.

176.    In defaming Ms. Bray, thus causing damage and stigma to her reputation, and in creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, Chief Cole, acting under color of state law, deprived her of her fundamental interest in being free from sexual harassment and such deprivation being arbitrary and shocking the conscience, Chief Cole violated Ms. Bray's right to substantive due process under the Fourteenth Amendment of the United States Constitution.

177.    In creating a hostile work environment, discriminating against Ms. Bray based on her gender and in retaliating against her in violation of Title VII of the Civil Rights Act of 1964, Mr. Khalife, Mr. Eidle and Mr. Seyler, acting under color of state law, deprived her of her fundamental interest in being free from sexual harassment and gender discrimination and such deprivation being arbitrary and shocking the conscience, Mr. Khalife, Mr. Eidle and Mr. Seyler violated Ms. Bray's right to substantive due process under the Fourteenth Amendment of the United States Constitution.

178.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, as they had final policy-making authority such that their conduct represented and continues to represent official policy.

179.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, also because a final policy-maker rendered and continues to render their conduct official for liability purposes by having delegated to them

authority to act or speak for the government, or by ratifying their conduct or speech after it occurred.

180. As a direct and proximate result of the violation of 42 U.S.C. § 1983 by the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

181. If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 1988, she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

182. Ms. Bray is also entitled to punitive damages as the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler willfully and intentionally violated her civil rights and/or acted and/or continue to act with reckless or callous indifference to her federally protected rights.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her compensatory damages, punitive damages, attorney's fees, costs, interest, and other such relief as the Court deems just and appropriate.

Count XIV
Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler
VIOLATION OF 42 U.S.C. § 1983 FOR DEPRIVATION OF EQUAL PROTECTION UNDER
THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION

183. Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

184. 42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States.

185. In defaming Ms. Bray, thus causing damage and stigma to her reputation, and in creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964,

Chief Cole, acting under color of state law, intentionally treated her differently from similarly situated males and such different treatment was improperly motivated by discrimination or punishment for exercising a constitutional right, thus depriving her of her right to equal protection under the Fourteenth Amendment of the United States Constitution.

186.    In creating a hostile work environment, discriminating against Ms. Bray based on her gender and in retaliating against her in violation of Title VII of the Civil Rights Act of 1964, Mr. Khalife, Mr. Eidle and Mr. Seyler, acting under color of state law, intentionally treated her differently, and continue to treat her differently, from similarly situated males and such different treatment has been improperly motivated by discrimination or punishment for exercising a constitutional right, thus depriving her of her right to equal protection under the Fourteenth Amendment of the United States Constitution.

187.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, as they had final policy-making authority such that their conduct represented and continues to represent official policy.

188.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, also because a final policy-maker rendered and continues to render their conduct official for liability purposes by having delegated to them authority to act or speak for the government, or by ratifying their conduct or speech after it occurred.

189.    As a direct and proximate result of the violation of 42 U.S.C. § 1983 by the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

190.    If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 1988, she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

191.    Ms. Bray is also entitled to punitive damages as the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler willfully and intentionally violated her civil rights and/or acted and/or continue to act with reckless or callous indifference to her federally protected rights.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her compensatory damages, punitive damages, attorney's fees, costs, interest, and other such relief as the Court deems just and appropriate.

Count XV
Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler
VIOLATION OF 42 U.S.C. § 1983 UNDER THE FIRST AMENDMENT OF THE UNITED
STATES CONSTITUTION

192.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

193.    42 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States.

194.    Ms. Bray engaged in protected speech by advocating and supporting ideas, principles and projects that were disfavored by Chief Cole, such ideas, principles and projects involving matters of public concern as they involved the Borough Police Department.

195.    In retaliation against Ms. Bray's protected conduct, Chief Cole, acting under color of state law, defamed and disparaged her and created a hostile work environment violating her rights under the First Amendment to freedom of expression and to petition government for redress of grievances.

196.    Ms. Bray also engaged in protected speech by filing a complaint with the Borough regarding Chief Cole's conduct, as it related to her, and the hostile work environment in the Borough government, such a matter being one of public concern.

197.    Ms. Bray additionally engaged in protected speech by filing a Charge of Discrimination with the EEOC.

198.    Mr. Khalife, Mr. Eidle and Mr. Seyler, acting under color of state law, retaliated against Ms. Bray for her protected conduct by subsequently intentionally treating her differently from similarly situated males and creating and perpetuating a hostile work environment, thus violating her rights under the First Amendment to freedom of expression and to petition government for redress of grievances.

199.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, as they had final policy-making authority such that their conduct represented and continues to represent official policy.

200.    The Borough is liable for the conduct of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, pursuant to 42 U.S.C. § 1983, also because a final policy-maker rendered and continues to render their conduct official for liability purposes by having delegated to them authority to act or speak for the government, or by ratifying their conduct or speech after it occurred.

201.    As a direct and proximate result of the violation of 42 U.S.C. § 1983 by the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, Ms. Bray has suffered and/or will suffer compensatory damages, including emotional and mental distress.

202.    If Ms. Bray prevails in this matter, pursuant to 42 U.S.C. § 1988, she will be entitled to an award of attorneys' fees and costs incurred as a result of this litigation.

203.    Ms. Bray is also entitled to punitive damages as the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler willfully and intentionally violated her civil rights and/or acted and/or continue to act with reckless or callous indifference to her federally protected rights.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her compensatory damages, punitive damages, attorney's fees, costs, interest, and other such relief as the Court deems just and appropriate.

Count XVI
Ms. Bray v. the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler
VIOLATION OF THE EQUAL RIGHTS AMENDMENT OF THE PENNSYLVANIA
CONSTITUTION, ART. 1, § 28

204.    Ms. Bray incorporates by reference all prior paragraphs as fully set forth herein at length.

205.    The Equal Rights Amendment of the Pennsylvania Constitution, Art. 1, Section 28 provides that "[e]quality of rights under the law shall not be denied or abridged in the Commonwealth of Pennsylvania because of the sex of the individual".

206.    In defaming Ms. Bray, thus causing damage and stigma to her reputation, and in creating a hostile work environment based on her sex, Chief Cole, denied Ms. Bray equality of rights under the law, thus violating the Equal Rights Amendment.

207.    In creating a hostile work environment, discriminating against Ms. Bray based on her gender and in retaliating against her in violation of the Pennsylvania Human Relations Act, Mr. Khalife, Mr. Eidle and Mr. Seyler denied Ms. Bray equality of rights under the law, thus violating the Equal Rights Amendment.

208    As a result, Ms. Bray has suffered and/or will suffer compensatory damages, including pecuniary damages and emotional and mental distress.

209.    Ms. Bray is also entitled to punitive damages given the outrageousness of Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler's conduct.

210.    Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler's conduct was also arbitrary, vexatious and in bad faith, entitling Ms. Bray to reimbursement of her attorney's fees.

211.    The Borough is vicariously liable for the damages suffered by Ms. Bray since Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler were acting within the scope of their employment when they committed this conduct.

WHEREFORE, Ms. Bray requests this Honorable Court to enter judgment against the Borough, Chief Cole, Mr. Khalife, Mr. Eidle and Mr. Seyler, jointly and severally, and award her compensatory damages, punitive damages, attorneys' fees and costs, interest, and other such relief as the Court deems just and appropriate.

Respectfully submitted,

NOCHUMSON P.C.

By: _____ NK5880 _____
NATALIE KLYASHTORNY
PA Attorney I.D. No. 80368
natalie.klyashtorny@nochumson.com (e-mail)
Nochumson P.C.
1616 Walnut Street
Suite 1819
Philadelphia, PA 19103
(215) 399-1346 (telephone)
(215) 399-1347 (facsimile)

Attorney for Plaintiff

Dated: March 23, 2010

# EXHIBIT "A"

To:     Malcolm A Eidle,  Council President
        Edwin R Seyler,  Council Vice President
        James F Schlegel,  Council Member
        Mark R Gangewere,  Council Member
        Kevin J Snyder,  Council Member
        Amy Bray,  Council Member
        Sandra K Green,  Mayor
        Gabriel Khalife,  Borough Manager
        Bonnie Bray,  Borough Secretary

The following is intended as an "internal use only" document. It is related to personnel issues and as such it is intended to be of a confidential nature. It is being provided to the Borough of Kutztown's elected officials, and its most senior administrators, in the hope that the information provided, will prove beneficial to them in determining the future of the Kutztown Police Department and hence providing the citizens of Kutztown with a police department that they can have confidence in will provide the highest level of police services. It is certainly not meant to be all inclusive in scope nor is it intended to portray it to be any opinion other than my own.

Last year Borough Council initiated a Peer-to-Peer management study of the Kutztown Police Department. This was not the first time; a similar study was conducted in 1988.

During the most recent study I, along with many of the other members of the Department, were interviewed by the consultant, Chief Richard Garipoli. During that interview Chief Garipoli, inquired why I do not wear the commendations ribbons that I had been awarded, on my uniform. He also inquired as to what I wished to see come out of the study. Having been a member of the Kutztown Police Department since May of 1980, I explained, in part as follows.

That originally I took great pride in being able to say I was a member of the Kutztown Police Department. That I had looked forward to going to work each day; to do a job I loved. That I had felt a great deal of self actualization, from the sense of accomplishment, that I was truly working in an occupation that amounted to more than just a pay check. That I could, and did, have a positive effect on lives of the citizens of the town that I choose to work in, the town I choose to live in and to raise a family in.

I also told Chief Garipoli that I had not been able to feel that way for a very long time. That the former pride I had felt was now replaced with embarrassment and disgust. That while formerly I looked forward to going to work, I know dreaded it. That where I had formerly believed my role, to use that old but true cliché, was "to serve and to protect" all, it was now relegated to primarily serving one person's interests above all others.

I expressed to Chief Garipoli that my career with the Kutztown Police Department was drawing to a close. That if his study of the Department resulted in one thing, it would be that our elected officials would really take the necessary actions to find out what the department had become and to take the appropriate actions to turn it around. That I hoped that my career would be able to end, as it had

1

began, with a sense of pride in being able to say I was a member of the Kutztown Police Department. A police department that was looked upon by its citizenry with confidence and respect.

Council will very soon have to make a decision as to who the next Chief of Police will be.

The selected candidate will face a difficult task. They will be taking over a demoralized Department, a fractured Department. One that I feel is confused as to what the true purpose of a police department is.

It is not unusual in searching for a new Chief of Police a governing body looks towards "experts" to guide them in knowing what skills the ideal candidate should have.   Do they know how to create a budget, a schedule, do they know how to write policies and procedures, are they familiar with employment law.

Are they someone who projects the correct public "image" of what a Chief of Police should be?

Those certainly are all very important skills for a successful police administrator to have.   But they are only skills. Those skills can be obtained without any great difficulty by any reasonably intelligent person who has the interest and drive to do so.   And most importantly having those skills does not mean that those skills will be used wisely. Used in a constructive and positive manner for the benefit of the citizens, the Borough, or the Department.

While I do not, in any way, mean to disparage the importance of those "skills" I also understand that there is a growth industry designed to create a paper record for "career advancement". It's referred to as "getting your ticket punched". It becomes more about the candidate's resume that about the candidate.   More about what courses they have sat through than what they have learned. More about their professional advancement than in the way they perform their profession.

I most certainly believe that the candidate should have the administrative "skills" needed to successfully manage a police department. However to be truly successful in turning <u>this</u> Department around they will need something far more important. They are going to need something the Department has lacked for a very long time.

<u>They will need to have personal and professional integrity.</u>

<u>They will need to be a leader and not just a boss who gets to wear a gold badge.</u>

They will need to be someone who knows that in a small department smoke and mirrors will only work for so long. That they will, in the end, be judged by the department members, the elected officials, and the general citizenry by what they do, not by what they say. They will be judged on how well their Department actually "serves and protects" and not on how impressive their statistical reports or power point demonstrations may appear to be.

Police work, by its very nature usually involves most decisions being made by the individual officer. Direct supervision, every minute of every shift, is neither possible nor desirable.   A good police department can only exist if you have good police officers.   How you obtain and keep good officers is by attracting and nurturing the type of person who realizes that police work involves more than just a

2

pay check, more than just doing good for themselves and their family, it is about doing good for their community and what their profession entails.

Consistently both the people, and the courts themselves, have held the police themselves must be held to a "higher standard" than the general populace. While that may seem unfair to some, it is not. It is in fact very necessary as no police department can be effective without most of its community respecting its authority to, within the laws enacted, regulate their behavior and to when necessary take coercive actions such as an arrest or lawful use force. If the people of the community do not respect the police, the ability of the police department to effectively perform their job is severely if not fatally impacted.

If you want a police department that is respected by the community, you must have a Chief of Police that is respected.

Following I give some examples of what I believed a Chief of Police with integrity and leadership espouses, and what they do not.

While it is their duty to be a strong advocate for their beliefs in how the Department should be managed, reasonable disagreement will occur both with those above and below their position. That it is most important that those disagreements be dealt with in a professional manner. That personal animosity must be avoided or at least controlled if the greater good is to be accomplished.

Disagreements should not result in expressing insulting or derogatory comments about your superiors to your subordinates.

- They do not refer to other Borough Department managers as incompetents because they disagree with your ideals. You use logical and good reasoning and try to convince them as to why you need that or why your way is in the best interest of the Borough. Sometimes you win, sometimes you lose. The idea is to argue in a respectful manner for they will need to be able to work together on many projects over a long period of time. Enemies do not make for good future cooperative efforts.
- They most certainly do not routinely and loudly refer to the Borough Secretary, as "The Big C" or more bluntly as "That Cunt!". It is acceptable to disagree with another's professional opinions or actions. It is not acceptable to reduce that other's opinion or actions to such a demeaning personal base.
- When addressing to a subordinate their opinion of a newly elected Mayor it should be an appropriate professional one, and not referring to them as someone they believe "...would be a good fuck."
- They must be able "to get it." When asked how a mandatory training session dealing with inappropriate comments and behavior in the work place, they should not reply back that it "was worth the time" because the "female lawyer who gave it was really hot!"

Likewise their interaction with subordinates should be done in a professional and a mutually respectful manner. Subordinates should clearly understand that they are expected to be and are looked upon as

3

valuable members of a team effort to provide the best police services possible to the community. They should expect fairness in their treatment and genuine concern for their welfare.

- A Chief with Integrity knows that you can never obtain or keep the respect of the department members by demanding it. It is only something you earn and you must keep earning it day after day, week after week.
- A Chief with Integrity does not, as a first step towards obtaining their position, cause themselves to be removed from the same standards of behavior that regulates all other members of the department.
- A Chief with Integrity sets a "higher standard" of behavior for themselves as an example for those they want to lead. "Do as I say, not as I do." Only results in a loss of respect and morale
- They do not threaten good officers with criminal arrest and drive them out of the department for the same behavior that they themselves have consistently displayed. To demand the highest level of ethical behavior of others is good. It is more than good it is essential. To demand it of others while exempting yourself is hypocritical, totally unacceptable, demoralizing and very counterproductive to the idea of a well performing and respectable police department.
- A leader does not, nor do they allow their entire management team, to remain in a meeting, discussing how to respond to a negative department evaluation, while a member of their department lies stretched out on a highway, seriously injured, after having been struck by a car while directing traffic at an accident scene.
- They do not make offensively inappropriate comments in front of secretarial staff or allow their friends to make offensively inappropriate comments in front of female officers.
- They do not comment negatively about their subordinates to members of the public without strong justification and their need to know thus avoiding the potential of causing unnecessary public embarrassment or ridicule and lessening the likelihood that subordinate will be a productive and loyal employee of the Borough.
- When they are questioned by superiors on why certain purchases had to be made, they do not make claims that it was because another member of the department needed the equipment rather than the true reason.
- They most certainly strive to create a working atmosphere that is positive. One that their subordinates will talk favorably about. One that creates a reputation that will result in more than, in these especially economically hard times, only a handful of people will apply for the position of police officer with. One in which only a single candidate remains acceptable and willing to take.
- They prepare their subordinates to one day take a higher position. They do not set them up for failure when they leave.

They would make truly good professional judgments when setting department priorities and allocating department resources. They realize that you are there to solve problems, to protect people and property.

- When you have a <u>predator</u> repeatedly abducting college coeds from the streets in your area you do not put the blame of the victims saying that it wouldn't happened if the victims had not been

4

out drinking and then only agree that proactive techniques must be started when another jurisdiction's Chief of Police threatens to do so if you don't.

- They do not fail to pursue a rape case, because it would be a difficult case, with the suspect later going on to victimize multiple additional females before they are finally arrested.
- When discussing a rape victim, they do not repeatedly comment on, how when she had been a prior burglary complainant, they had managed to look up her skirt to admire the type of underwear she had on.
- They do not allow a victim to lay in a hospital in critical condition with a throat wound and allow witnesses to leave a crime scene, not interviewed, because you feel it is more important that the criminal investigator be kept available to assist with festival escorts later that morning than to be called out in the middle of the night for a crime that had just occurred.
- They do not order the premature ending of a felony drug search warrant execution and order the officers involved to return to the police station to attend a routine department meeting so that they can "introduce the guys to the new Mayor."
- They do not expect prospective police raids to be scheduled and planned so as not to conflict with their own off-duty activities.
- They do not ignore an ongoing, consistent, and widely known problem outside a bar, allow it to exist for years and only react to it only when it becomes a point of contention in an outside organization's negative evaluation and report. They do not stand by and allow that problem to reestablish itself at the beginning of the semester. They would not, when finally acting on the problem, fail to plan and execute a program to alleviate or end the problem, but rather engage in what is actually a once and done publicity stunt designed only to give the _impression_ of doing something and to make themselves look good.
- They do not give subordinates instructions orally that they the refuse to give or confirm in writing.
- They do not put a priority on expending investigative resources of clerical functions.
- They do not encourage a bureaucratic philosophy where the process is far more important that the product. Where it is more important that one does not see crimes than to recognize it and expended the resources necessary to respond in and effective manner.
- They do not encourage a philosophy were it is more important to simply make an arrest and forget about it then to actually solve the problem.
- They are someone who understands that while it is very important and beneficial to maintain a good professional relationship with the media, there are professionally and legally appropriate limits. That they must not forsake their primary duty of ensuring the police department functions in a way that best protects the community in order to pander.

They know that financial resources of any entity are finite and they are to be used carefully for the good of all.

- They do not, when deciding that an additional weapon system is needed for the department, and after years of insisting on uniformity of weapons, have purchased a special weapon for themselves. One that unlike all the others is a fully automatic assault rifle. One that they refer

to as reminding them of the ones they see on their favorite science fiction show.  In addition, in doing so they have to expended additional funds in order to send the fire arms instructor for specialized, out of the area, training just for that one weapon.  They then proceed to take that weapon home with them rather than maintain it in a firearms safe at the police station.  A weapon that fires ammunition that easily defeats police body armor.

- They do not, after years of not feeling the need to purchase digital video equipment to replace an antiquated and poorly functioning video tape camera, for the recording of crime scenes, suddenly purchase it.  Not by first consulting with experts as to what would be the most appropriate and functional equipment for the tasks anticipated and then searching for the most reasonable price for that equipment, rather just go out and purchase something just to be able to have one.  Then after doing so, decided that the equipment does not stay at the department but rather is taken home with you for a while so they can "familiarize" themselves with its operation.
- They do not purchase a $349.00 clock.  When question why that purchase was needed, claim that they had to do so that the secretary will be able to know the 24 hour clock system, when in fact the secretary had become familiar with it years before as well as the clock being located at a place that only they, and not the secretary, can see directly from their desk.  When those claims are met with disbelief, respond by purchasing another $349.00 clock and place it in the squad room where it was neither needed and only became a symbol of personal extravagance and waste.
- They do not expend department time and funds for training that is clearly designed to benefit future employment rather than their current employment

A Chief with integrity does not themselves use their lawful authority in an officiously manner or permit personal feelings animosities or friendships to influence their official duties.

- They do not predisposition someone as the right candidate for their own police department because that person, while working for a different department, did not take what would have been a totally appropriate and reasonable enforcement action against someone you know personally..
- They do not take enforcement actions against one person that they would not take, against a different person simply because they didn't like them in high school

A Chief that has integrity and is a true Leader knows that "Doing the right thing isn't always easy.  But it is always the right thing."  That others will follow you, even if they don't necessarily agree with you, if they believe that you are trying to do "the right thing" and not just doing what is best for yourself.

For the benefit of the Borough, the community and the department, and its members, I sincerely hope that the decision Borough Council is about to make is based on a fair evaluation of the true character of the candidates and not on who looks like the perfect Chief on paper.  While any person can train their mind to do a job better, a person without personal integrity can never train their heart to want to.

Sincerely,

6

EXHIBIT "B"

## BOROUGH OF KUTZTOWN, BERKS COUNTY, PENNSYLVANIA
## POLICY STATEMENT ON EQUAL EMPLOYMENT OPPORTUNITY

**Equal Employment Opportunity:**

The Borough of Kutztown, Berks County, Pennsylvania (the "Borough") is committed to the principle of equal employment opportunity. It shall be the official policy of the Borough to incorporate this principle in all management decisions related to hiring and employment. All employees are responsible for the execution of this policy and for full cooperation in its enforcement. No office or facility of the Borough shall allow discriminatory practices to exist in any personnel actions involving recruitment, appointment, promotion, training, or separation of any person because of race, color, religion, ancestry, national origin, disability, sex, union membership, age (40 and over), Veteran's status, or any other legally protected characteristic. All such actions are based on individual merit, qualifications, competence and the ability to successfully complete the interview process, as well as the requirement to pass other employment tests.

Applicants or employees who believe they are the victim of impermissible discrimination should contact one of the following individuals: The Borough Manager (610) 683-6131, the Borough Secretary/Human Resources Director (610) 683-5933, or a member of the Personnel Committee.

Individuals may also have the right to file with one or more of the following agencies:

Pennsylvania Human Relations Commission
1101-1125 South Front Street
5th Floor
Harrisburg, PA 17104-2515

Equal Employment Opportunity Commission
Philadelphia District Office
21 South Fifth Street, Suite 400
Philadelphia, PA 19106-2515

State Civil Service Commission
Second Floor
Strawberry Square Complex
P.O. Box 569
Harrisburg, PA 17108-0569

The Borough also requires that all work performed by Borough contractors and their subcontractors be accomplished through this principle of equal employment opportunity. Therefore, all contracts with the Borough must include a statement of non-discrimination confirming that contractors and their subcontractors will insure that applicants and employees are not discriminated against on the basis of race, color, religion, ancestry, national origin, age (40 and over), disability, sex, union membership, Veteran's Status, or any other legally protected characteristic.

## BOROUGH OF KUTZTOWN, BERKS COUNTY, PENNSYLVANIA
## ANTI-HARASSMENT POLICY

**Harassment Policy**

The Borough is committed to providing a work environment that is free of unlawful harassment. The Borough will not tolerate actions, words, jokes, or comments based on an individual's sex, pregnancy, race, ethnic background, age, religion, disability or any other legally-protected characteristic, if such conduct would be offensive to a reasonable person. Such harassment (both overt and subtle) can serve to create an offensive work environment and therefore, is prohibited. All employees are responsible for the execution of this policy and for full cooperation in its enforcement.

Scope:

This policy shall apply to all employees, customers, vendors, contractors, governing council members, the Mayor, appointed Borough officials, visitors and anyone doing business with the Borough.

Purpose:

To maintain a working environment free of unlawful harassment.

Sexual Harassment:

For the purpose of this policy we define sexual harassment, as follows: (1) sexual flirtations, touching, advances, etc.; (2) verbal abuse of a sexual nature; (3) graphic or suggestive comments about an individual's dress or body; (4) sexually degrading words to describe an individual; (5) displaying sexually suggestive objects or pictures, including nude photographs in the workplace.

Sexual harassment also includes: (1) Explicitly or implicitly suggesting that submission to sexual conduct is a term or condition of an individual's employment; (2) Using submission or rejection of the conduct as a basis for employment decisions (3) Substantially interfering with the individual's work performance or creating an intimidating, hostile or offensive work environment.

No manager, supervisor, officer, executive, council member, mayor, appointed official, employee or other individual has the authority to condition an employee's job or job benefits on the exchange of sexual favors.

Other Prohibited Harassment:

Prohibited harassment includes conduct which has the purpose or effect of unreasonably interfering with an employee's work performance or creating an environment which is intimidating, hostile or offensive to the employee. No manager, supervisor, officer, executive, council member, mayor, appointed official, employee or other individual has the authority to

engage in any behavior which creates an intimidating, hostile or offensive work environment because of an individual's race. ancestry or national origin, age, religion, disability, or membership in any legally-protected class. It is also impermissible to use someone's membership in a legally-protected class as a basis for employment decisions under this policy.

Procedure:

Any employee who believes s/he is the victim of harassment on any unlawful basis or who observes another person subjected to such harassment, is required to promptly report the facts of the incident to the Borough Manager, the Secretary/Director of Human Resources or a member of the Personnel Committee. If a supervisor/manager is notified of alleged harassment, s/he must notify either the Borough Manager, the Secretary/Director of Human Resources or a member of the Personnel Committee immediately. The Borough will promptly conduct an investigation. To the extent possible, the investigation will be conducted in a confidential manner and information will be communicated only to those persons who have a need to know. In all cases, an individual or individuals will be identified as being harassed, and the Borough will advise the individual of the conclusions.

No retaliation against any person who files a complaint or cooperates in an investigation shall be taken. Any person who believes that have been the victim of retaliation for complaining about harassment, serving as a witness, or otherwise cooperating in an investigation of harassment, is required to report the retaliation using the procedure above for the reporting of harassment complaints.

After appropriate investigation, any employee who is found to have engaged in harassment or retaliation of another employee will be subject to appropriate disciplinary action and may be subject to immediate discharge.

Employees are apprised that if they believe they are the victim of impermissible harassment, they also have the right under state and federal law to file a complaint with the Pennsylvania Human Relations Commission and the federal Equal Employment Opportunity Commission (EEOC). Such a complaint must be filed with the Pennsylvania Human Relations Commission within 180 days of the last date of unlawful harassment and with the EEOC within 300 days of the last incident of unlawful harassment. Civil service employees may also have the right to file a complaint with and request a hearing before the State Civil Service Commission. Such requests must be made within 20 days of the adverse job action suffered by the employee or the last incident of unlawful harassment. Further information on filing a complaint with these agencies is available on designated Borough bulletin boards.

**EXHIBIT "C"**

DATE:      February 17, 2009

TO:        Personnel Committee Members

FROM:      Bonnie Bray   *Bonnie Bray*

SUBJECT:   Harassment and EEO Complaint

---

Please be advised that I am filing a formal unlawful harassment and gender discrimination complaint with the Borough of Kutztown against the Borough of Kutztown Police Department as a result of my rights as an employee having been violated.

On Tuesday, January 13, 2009, I received a copy of a very disturbing letter written by Patrol Officer Robert Gately which was addressed and distributed to Council, the Mayor, the Borough Manager and myself. The letter contained some very disparaging and offensive remarks directed at me personally by the police department.

Based on the Anti-Harassment Policy of the Borough of Kutztown, which was adopted by Council on December 20, 2005, any employee who believes s/he is the victim of harassment of any unlawful basis or who observes another person subjected to such harassment, is required to promptly report the facts of the incident to the Borough Manager, the Secretary/Director of Human Resources or a member of the Personnel Committee immediately. Thinking that the Borough would do the right thing by taking the appropriate measures to investigate or to take action with respect to the serious assertions made in Mr. Gately's letter, I deferred taking any action on my own. A month has passed, and since I have not been made aware of any proceedings to date, I am compelled to file charges at this time.

I'm shocked, mortified and deeply troubled and offended to find out that this type of despicable conduct has been taking place and that no one in the police department has had the integrity to report this unlawful harassment until now. To allow this type of malicious and cruel attack on an employee is forever unacceptable and is clearly in violation of the Borough of Kutztown's Anti-Harassment Policy and Policy Statement on Equal Employment Opportunity.

I consider this matter extremely urgent, and I hope you do, too. Please advise me at your earliest convenience what course of action the Borough plans to take. Awaiting your response. Thank you.

EXHIBIT "D"

# BOROUGH OF KUTZTOWN

*A Community Committed to Tradition and Progress*
*Incorporated ~ 1815*



www.kutztownboro.org          www.hometownutilicom.org

45 Railroad Street * Kutztown, PA 19530-1112 * Phone: 610-683-6131 * Fax: 610-683-6729 * E-mail: admin@kutztownboro.org

*Electric*
*Distribution*

*Water*
*Service*

*Sewer*
*Service*

*Television*

*Broadband*
*Internet*

*Telephone*

*Home*
*Security*

*Refuse*
*Collection*

*Recycling*
*Collection*

*Highway*
*Maintenance*

*Park*
*Services*

*Swimming*
*Pool*

*Code*
*Administration*

*Full Service*
*Police*

*Railroad*
*Management*

| | |
|---|---|
| To: | Bonnie Bray |
| From: | Ed Seyler, Personnel Committee Chair |
| Date : | February 25, 2009 |
| Re: | Harassment and EEO Complaint |

I am in receipt of your Complaint of February 17, 2009 regarding information contained in a January 13, 2009 letter from Officer Robert Gately. In Officer Gately's letter, he states that the former Police Chief routinely engaged in use of unacceptable and demeaning language in reference to you. He also alleged the former Police Chief engaged in such language with respect to the Mayor and one of the attorneys who has represented the Borough.

For purposes of this letter, we assume that Officer Gately's assertions are true, and that the former Chief used unacceptable and inappropriate language in all of these circumstances. The Borough of Kutztown finds such language to be both inappropriate and unacceptable. It certainly would have been grounds for serious discipline had the Police Chief remained in his position.

Prior to the sending of this letter, the Police Chief resigned, and therefore is no longer employed by the Borough. We are, therefore, unable to engage in any disciplinary action at this time.

There was no allegation by Officer Gately that any other member of the Borough of Kutztown Police Department engaged in such conduct, so we do not consider a further investigation necessary. We will, however, make a point of reminding the members of the Police Department about their harassment training and make a point to them that use of profane and sexual language about any employee of the Borough is inappropriate and a violation of the Borough's policies. If there is any other course of action you believe is appropriate, please let us know in writing.



2534514-1

**EXHIBIT "E"**

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | | CHARGE NUMBER |
|---|---|---|
| | FEPA | |
| X | EEOC | |

| Pennsylvania Human Relations Commission | and EEOC |
|---|---|

State or local Agency, if any

S.S. No. 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

NAME *(Indicate Mr., Ms., Mrs.)*
Mrs. Bonnie Bray

HOME TELEPHONE *(Include Area Code)*
(610) 682-0258

STREET ADDRESS    CITY, STATE AND ZIP CODE
116 Beaver Creek Road    Fleetwood, PA 19522

DATE OF BIRTH
7/24/48

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

NAME
Borough of Kutztown

NUMBER OF EMPLOYEES, MEMBERS
50-100

TELEPHONE *(Include Area Code)*
(610) 683-5933

STREET ADDRESS    CITY, STATE AND ZIP CODE
45 Railroad Street    Kutztown, PA 19530

COUNTY
Berks

NAME

TELEPHONE NUMBER *(Include Area Code)*

STREET ADDRESS    CITY, STATE AND ZIP CODE

COUNTY

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

| | RACE | | COLOR | X | SEX | | RELIGION | X | AGE |
|---|---|---|---|---|---|---|---|---|---|
| X | RETALIATION | | NATIONAL ORIGIN | | DISABILITY | | OTHER *(Specify)* | | |

DATE DISCRIMINATION TOOK PLACE
EARLIEST *(ADEA/EPA)*    LATEST *(ALL)*

| X | CONTINUING ACTION |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am employed by the Borough of Kutztown in the positions of Secretary and Human Resources Director. On January 13, 2009, I received a copy of a letter written by Patrol Officer Robert Gately which was addressed and distributed to the Mayor, all the members of Borough Council, the Borough Manager and myself. The letter contained some very disparaging and offensive remarks based on my gender which had previously been directed at me by the former Chief of Police. Based on Officer Gately's letter, my understanding is that the discriminatory conduct that he complained of had been taking place openly for years. Notwithstanding the Borough of Kutztown's Anti-Harassment Policy, no action has ever been taken to investigate the matter and/or stop the discriminatory, unlawful conduct. On the contrary, the Borough government, which is predominantly male, created, enabled and perpetuated a sexually hostile work environment which has allowed discriminatory conduct to take place unabated and continue into the present time. After I complained to the Borough about its lack of action in remediating the matter, my working conditions have become more onerous to the point where I feel retaliated against. As a result of the discriminatory conduct, not only have I been denied promotional opportunities, but I have also been restricted in performing my job duties effectively as I don't feel that I am afforded respect and deference by my colleagues and superiors.

Furthermore, I am one of the oldest employees of the Borough Government. I feel I have been discriminated against based on my age, as well as gender, as most of my colleagues and superiors are younger than I am and those younger than myself are treated better.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY – *(When necessary for State and Local Requirements)*

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

SIGNATURE OF COMPLAINANT

I declare under penalty of perjury that the foregoing is true and correct.

*Bonnie Bray*

Date 5-31-09    Charging Party *(Signature)*

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(Day, month, and year)*

EEOC FORM 5 (Test 10/94)

**EXHIBIT "F"**



**U.S. Department of Justice**

Civil Rights Division
NOTICE OF RIGHT TO SUE
WITHIN 90 DAYS

CERTIFIED MAIL
5067 2782

*950 Pennsylvania Avenue, N.W.*
*Karen Ferguson , EMP, PHB, Room 4239*
*Washington, DC 20530*

March 11, 2010

Mrs. Bonnie Bray
c/o Natalie Klyashtorny, Esquire
Nochumson Law Offices
Attorney at Law
1616 Walnut St., Ste. 1819
Philadelphia, PA  19103

Re:  EEOC Charge Against Borough of Kutztown
     No. 530200903266

Dear Mrs. Bray:

      Because you filed the above charge with the Equal Employment
Opportunity Commission, and more than 180 days have elapsed since the date
the Commission assumed jurisdiction over the charge, and no suit based
thereon has been filed by this Department, and because you through your
attorney have specifically requested this Notice, you are hereby notified
that you have the right to institute a civil action under Title VII of the
Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against
the above-named respondent.

      If you choose to commence a civil action, such suit must be filed in
the appropriate Court within 90 days of your receipt of this Notice.

      The investigative file pertaining to your case is located in the EEOC
Philadelphia District Office, Philadelphia, PA.

      This Notice should not be taken to mean that the Department of
Justice has made a judgment as to whether or not your case is meritorious.

                              Sincerely,

                         Thomas E. Perez
                    Assistant Attorney General
                       Civil Rights Division

              by

                       Karen L. Ferguson
                 Supervisory Civil Rights Analyst
                 Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Borough of Kutztown



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Philadelphia District Office**

801 Market St., Suite 1300
Philadelphia, PA 19107-3127
(215) 440-2601
TTY (215) 440-2610
FAX (215) 440-2604 & 2847

Our Reference: Charge Number 530-2009-03266
Bray v. Borough of Kutztown

Ms. Bonnie Bray
116 Beaver Creek Rd.
Fleetwood, PA 19522

Dear Ms. Bray:

The above-referenced charge has been filed with the Equal Employment Opportunity Commission ("EEOC") under both Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Age Discrimination in Employment Act of 1967, as amended ("ADEA").

Your attorney has requested that the EEOC issue you a Notice of Right to Sue for this charge. As explained in the enclosed letter, the EEOC has forwarded to the U.S. Department of Justice ("DOJ") your request for a Notice of Right to Sue with respect to the Title VII portion of the charge. Please refer to that letter for further information concerning that issuance.

For charges against public employers which are filed under the ADEA, there is no requirement to forward such allegations to the DOJ for issuance. Based on your indicated intent to file a private ADEA lawsuit in this matter, EEOC is hereby administratively closing this charge under the ADEA and terminating all processing. Therefore, this letter constitutes notice of EEOC's dismissal for the ADEA portion of the charge. Any 90-day period applicable to this charge during which a private lawsuit should be filed under the ADEA begins upon your receipt of this notification of dismissal.

Should you decide to exercise the right to file a lawsuit, please notify this office that suit has been filed so that the Commission can take appropriate action to ensure that the case file will be preserved in accordance with the Commission's file destruction procedures.

If there are any questions concerning this matter, please contact Ms. Elizabeth Wjasow, Investigator at (215) 440-2661.

Sincerely,

_William_

William D. Cook
Enforcement Manager

_March 2, 2010_
Date

cc: Natalie Klyashtorny, Esq. (For Charging Party)
Gabriel Khalife, Borough Manager (For Respondent)

## CERTIFICATE OF SERVICE

I, Natalie Klyashtorny, Esquire, HEREBY, certify that a true and correct copy of Plaintiff's Amended Complaint was filed electronically, is available for viewing and downloading from the ECF system and has been served electronically upon the following:

John P. Morgenstern, Esquire
Rufus A. Jennings, Esquire
Deasey, Mahoney, Valentini & North
1601 Market Street
Suite 3400
Philadelphia, PA 19103

*Attorney for Defendants Borough of Kutztown, Theodore R. Cole, Jr., Gabriel Khalife, Malcolm A. Eidle and Edwin K. Seyler*

NK5880
_____
NATALIE KLYASHTORNY

Dated: March 23, 2010